IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ORLEAN ARTURO VELASQUEZ | § | |
| | § | |
| VS. | § | CIVIL NO.4:12-CV-251-Y |
| | § | (Criminal No.4:10-CR-066-Y(6)) |
| UNITED STATES OF AMERICA | § | |

ORDER RESOLVING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255
AND ORDER DENYING CERTIFICATE OF APPEALABILITY

Now pending before the Court is defendant Orlean Arturo Velasquez's form motion for relief under 28 U.S.C. § 2255, an accompanying memorandum in support, and his April 14, 2012, declaration.[1] As directed by the Court, the government filed a response. Velasquez did not file a reply. After careful consideration and review of defendant Velasquez's motion under § 2255, the memorandum in support and declaration, the government's response, the file and record of this case, and the applicable law, the Court concludes that Velasquez's § 2255 motion must be denied for the reasons stated by the government and as noted here.

Velasquez's conviction and sentence arise from his agreement with Jose' Danilo Quiroz Jr., Jose Danilo Quiroz Sr., Moises Alirio Alvarez, Luis Alonzo Molina, Dimas Humberto Pena, and Sandra Montoya-Amaya to conduct an armed, home-invasion robbery of a drug

---

[1] The form § 2255 motion, memorandum, and two-page declaration were all filed as one document on the docket with the ECF-imaged pages numbered as 1-23. It appears in putting the papers together, Velasquez mixed one page from his declaration with a page from his memorandum. ECF-stamped page 21 is actually page two of Velaquez's memorandum of law, and ECF-stamped page nine is actually page two of Velasquez's declaration. As counsel for the government noted this to the Court and responded accordingly, the Court will consider the papers as docketed, and refer to each page through the ECF-imaged number.

stash house they believed contained 20-to-30 kilograms of cocaine. (Velasquez's Factual Resume (FR) at ¶¶ 2-10.) After stealing the cocaine, Velasquez and his co-conspirators were going to divide the cocaine and sell it. (FR ¶ 5.) All defendants were arrested before the home invasion took place, their agreement and plan having been witnessed and recorded by undercover officers. (FR ¶¶ 9-11.)

In June 2010, Velasquez pleaded guilty to one count of conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). The Court sentenced Velasquez to a term of 135 months' imprisonment (the bottom of the guideline range), along with a five-year term of supervised release. Although Velasquez filed a direct appeal, raising a challenge to the Court's calculation of the guideline range through application of the drug guideline, U.S.S.G. § 2D1.1, rather than the robbery guideline, U.S.S.G. § 2B3.1, the United States Court of Appeals for the Fifth Circuit affirmed the conviction and sentence.[2] The instant § 2255 motion was timely filed.

Velasquez seeks relief under 28 U.S.C. § 2255 on the basis that his counsel provided ineffective assistance by (1) failing to argue to this Court that he agreed only to commit a robbery of money and not a conspiracy to possess drugs, and as a result his plea cannot be considered knowing and voluntary; and (2) failing to

---

[2] *United States v. Velasquez,* 428 Fed. Appx. 273 (5th Cir. May 17, 2011).

move to suppress his statements made to government agents after his arrest. (Motion at 4, § 12 (A) and (B); Memorandum at 21,10; Declaration at 9, ¶¶ 4-8.)

Velasquez's only allegations before the Court are for ineffectiveness of counsel. The now-familiar, two-pronged standard for review of ineffective-assistance-of-counsel claims was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[3]

The burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness by identifying acts or omissions of counsel "that are . . . not . . . the result of reasonable professional judgment."[4] A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[5] There is a strong

---

[3]*Strickland,* 466 U.S. at 687.

[4]*Id.* at 690.

[5]*Id.*

presumption that the performance of counsel "falls within the wide range of reasonable professional assistance."[6] A defendant must also affirmatively prove prejudice by showing that a particular error of counsel actually had an adverse effect on the defense, an adverse effect being shown, in turn, by demonstrating a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."[7] This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result."[8]  To demonstrate prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[9]

"Recognizing the 'temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence,'" the Supreme Court recently re-emphasized "that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment.'"[10]  The Supreme Court also cautioned that ineffective-assistance claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . ."[11]

---

[6]*United States v. Samuels,* 59 F.3d 526, 529 (5th Cir. 1995); *see also King v. Lynaugh,* 868 F.2d 1400, 1405 (5th Cir.), *cert den'd,* 489 U.S. 1093 (1989).

[7]*Strickland,* at 694 (general discussion at pp. 691-695).

[8]*Cullen v. Pinholster,* 131 S.Ct. 1388, 1403 (2011)(citing *Harrington v. Richter,* 131 S.Ct. 770, 791 (2011)).

[9]*Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

[10]*Pinholster,* 131 S.Ct. at 1403 (citing *Strickland,* 466 U.S. at 690)).

[11]*Harrington v. Richter,* 131 S.Ct. 770, 788 (2011).

4

Thus, the high court admonished that "the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.'"[12]

*Ineffective Assistance--Knowing and Voluntary Nature of Plea*

Velasquez accuses his counsel, J. Steven Bush, of "failing to investigate the facts and law surrounding the case," which he argues, in turn, caused Bush to give him wrong advice (Mot. at 4 § 12(A); Memorandum at 21.) He alleges Bush told him that "the government could have chose [sic] to indict under the robbery charges but that they chosed [sic] to indict under [the] drug conspiracy." (Memorandum at 16.) Velasquez contends he "has now learned that counsel was wrong" because, he argues, "[t]he government cannot choose to indict either under the drug conspiracy or the robbery conspiracy if [he] did not conspire for both crimes." (Memorandum at 17.) In this regard, he also writes that he "agreed to commit robbery to steal money and it was the government's burden to prove otherwise." *Id.* Velasquez contends counsel "should have made the government prove that [he] knew that he was going to a robbery of a stash house where drugs were kept," and that "[u]nder these circumstances the government erroneously indicted [him] in a drug conspiracy and didn't charge [him] with conspiracy to steal money which was the robbery he agreed to." (Memorandum at 18.) Velasquez argues that as a result, Bush gave

---

[12] *Id.* (citing *Strickland,* 466 U.S. at 689-690).

him wrong advice and his "plea agreement cannot be considered knowingly under the circumstances." (Memorandum at 18.)

The record shows that Velasquez signed a factual resume containing a stipulation of facts, and then pleaded guilty at a rearraignment proceeding to the charge of conspiracy to possess a controlled substance with intent to distribute. Because a guilty plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences."[13] Ordinarily, a waiver is entered knowingly, intelligently, and with sufficient awareness, when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances--even though the defendant may not know the specific detailed consequences of invoking it."[14] With "respect to a defendant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."[15] "[A] defendant need only understand the direct consequences of the plea;

---

[13] *United States v. Ruiz*, 536 U.S. 622, 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

[14] *Id.* at 630.

[15] *Id.*

he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur."[16]

A guilty plea may be invalid if induced by a defense counsel's unkept promises.[17] Ordinarily, however, "a defendant will not be heard to refute his testimony given under oath when pleading guilty."[18] A prisoner bears a heavy burden to convince a habeas court that his guilty plea was involuntary after testifying to its voluntariness in court.[19] "Solemn declarations in open court carry a strong presumption of verity," and the "representations of the defendant, his lawyer, and the prosecutor at a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."[20] Any documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight."[21]

Velasquez's claim that his plea of guilty to a charge of conspiracy to possess a controlled substance with intent to distribute was not knowing and voluntary is directly refuted by his testimony and a review of the factual resume. Both Velasquez and

---

[16]*United States v. Hernandez,* 234 F.3d 252, 255 (5th Cir. 2000).

[17]*United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)(citing *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989)).

[18]*United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985)(quoting *United States v. Sanderson,* 595 F.2d 1021, 1022 (5th Cir. 1979)).

[19]*DeVille v. Whitley,* 21 F.3d 654, 659 (5th Cir.), *cert. den'd,* 513 U.S. 968 (1994).

[20]*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977); *see also United States v. Palmer,* 45 F.3d 484, 491 (5th cir. 2006) [SECOND PART NEW CITE - SEE IF ADDS ANYTHING].

[21]*See United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994).

7

his counsel signed the factual resume. (FR at 5.) That document included his plea to the sole charge as recited above, "conspiracy to possess a controlled substance with intent to distribute". (FR at 1.) That document included the listing of the essential elements of the offense to include:

> 1. That on or about the date and location alleged in the indictment;
> 2. That two or more persons, directly or indirectly, reached an agreement which included *possessing cocaine* and then distributing such *cocaine*;
> 3. That the defendant knew of the unlawful purpose of the agreement;
> 4. That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; and
> 5. That the overall scope of the conspiracy involved *at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance*. (FR at 1-2)(emphasis added).

Moreover, the factual resume also included a detailed "Stipulation of Facts" which included information regarding a plan and discussion by Velasquez and his co-defendants with an undercover special agent to conduct an armed robbery of a cocaine stash house, steal a quantity of cocaine, and then have each of the participants in the proposed robbery receive an equal share of the cocaine. (FR at Stipulation of Facts, ¶¶ 1-6.) Velasquez admitted in the stipulation that he was present at a planning meeting on March 23, 2010, with Montoya-Amaya, Pena, and Molina and two agents acting in undercover capacities, when they discussed "the home invasion robbery plot of the alleged cocaine stash house . . . and that each of the participants would receive their equal share of the cocaine after the crew conducted the armed home invasion." (FR

8

at Stipulation, ¶ 5.) Velasquez also admitted to the resume noting that when it was mentioned that the stash house is protected by armed guards, "Velasquez smiled and shrugged his shoulders at the possibility of a violent encounter with armed guards [and] stated that he would have a firearm in hand as they made their entry into the residence." (FR at Stipulation, ¶ 6.) The resume also recounted Velasquez's presence with the others on the day of the planned robbery, March 25, 2010, and Velasquez's assurance to one of the undercover agents that "the suspects had an AK-47 rifle inside the back of the silver Tahoe." (FR at Stipulation, ¶ 9.) Velasquez admitted that at the time of arrest he "ran from law enforcement and was observed throwing a Taurus .38 caliber revolver, loaded with six rounds of ammunition, onto the ground as he attempted to escape." (FR at Stipulation, ¶ 10.)

At the rearraignment hearing, Velasquez acknowledged to the Court that he understood the factual resume, that the facts stated therein were true and correct, and that the signature on page 5 of the resume was his. (June 2, 2010 Rearraignment Transcript at 37-40.) He admitted to the Court that he committed each of the essential elements of the conspiracy to possess a controlled substance offense to which he pleaded guilty. (June 2, 2012 Tr. at 24-26.) He testified that he entered the plea of guilty voluntarily, of his own free will, and without any other promises or assurances. (June 2, 2012 Tr. at 29-30.) Velasquez also testified that he had discussed the case and the charges with his attorney, and "[was] fully satisfied with the representation and advice [he] received from [his] attorney in this case." (June 2,

9

2010 Tr. at 26.) Velasquez acknowledged that if his guilty plea were accepted by the Court, he "would be adjudged guilty of the offense charged against [him] in the indictment (the charge of conspiracy to possess a controlled substance with intent to distribute)." (June 2, 2010 tr. at 30.) He also acknowledged that if his sentence were more severe than expected he would still be bound by his plea of guilty and would not have the right to withdraw it. (June 2, 2010 Tr. at 34-35.) The Court accepted Velasquez's guilty plea and determined that it was a "knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense charged by the [indictment]." (June 2, 2010 Tr. at 40.)

After review of this record, Velasquez fails to show why the Court should not afford "great evidentiary weight" to the factual resume he agreed to. Nor does he demonstrate why the Court should not afford the "strong presumption of verity" to the prior sworn testimony that he understood the charge of conspiracy to possess a controlled substance, understood the essential elements, and entered his guilty plea knowingly and voluntarily. Although Velasquez now denies that he knew he was conspiring to steal cocaine and sell it, and alleges he conspired only to steal money, such self-serving and after-the-fact revisions are insufficient to overcome his prior representations to this Court and his admissions in his factual resume. Thus, the Court concludes that Velasquez's first ground for relief--that his plea of guilty was not knowing and voluntary because it was the result of ineffective assistance of counsel--must be denied.

*Ineffective Assistance--Failing to Move to Suppress Post-Arrest Statements*

In his next ground, Velasquez contends counsel "was ineffective for failing to file a motion to suppress [his] alleged post arrest statements . . . ." (Mot. at 4 § 12(b).) Velasquez now denies he ever told the agents he knew the object of the home invasion conspiracy was to steal drugs and sell them. (Memorandum at 16.) In this regard, Velasquez contends "[s]ince the beginning of the case [he] advised his counsel that a motion to suppress was necessary because he did not admit that he knew the conspiracy was to steal drugs." *Id.* He argues counsel should have moved to suppress his "alleged statement made without the presence of counsel." *Id.*

In order to support a claim of ineffectiveness based upon defense counsel's failure to move to suppress evidence, a prisoner must prove that his constitutional claim is meritorious, that the decision not to move to suppress was unreasonable, and that he suffered prejudice.[22] "When the alleged failure of counsel occurs prior to a guilty plea, the movant must show that a suppression motion had merit, and that if the motion had been granted, he would not have pled guilty and would have insisted on his right to stand trial."[23] With regard to the review of custodial statements, any statement made during a custodial interrogation is admissible if

---

[22] *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986).

[23] *United States v. Mackay,* No. 3-9-7CR-0208T, No.3-04-CV-0413-D, 2007 WL 700895, at * 28 (N.D. Tex. March 6, 2007)(citing *Hill v. Lockhart,* 474 U.S. at 57-60)).

11

the government shows the defendant knowingly and voluntarily waived his *Miranda*[24] rights and agreed to answer questions.[25]

In his factual resume, Velasquez admitted that he was advised of his *Miranda* rights and waived them. (FR at ¶ 13.) He also acknowledged in the resume that after waiving his *Miranda* rights, he admitted his involvement to commit an armed home invasion to steal 20-30 kilograms of cocaine for future distribution. (FR at ¶ 13.) The investigative material in the probation file includes a copy of a report of the March 25, 2010 interview by ATF agents with Velasquez. The presentence report provided to the Court summarized that report as to Velasquez's post-arrest statement:

> Velasquez consented to a post-arrest interview with ATF agents. During the interview with ATF, the defendant admitted attending the meeting on March 23, 2010, with the two undercover agents, Montoya-Amaya, Molina, and Pena.  Velasquez understood the plan to steal drugs and that each member would be paid. The defendant understood there would be 30 kilograms of cocaine that would be divided up among them. (Presentence Report (PSR) ¶ 60.)

Velasquez's belated claim that he did not make such admissions cannot now be a basis to claim counsel should have moved to suppress. Velasquez does not challenge the voluntariness of his post-arrest statement or that he waived the right to have counsel present at the custodial interview. He has not alleged any arguable reason any motion to suppress would have been meritorious.  Rather, the records revels that such a challenge would have been frivolous. As Velasquez himself admitted that he had been advised of his

---

[24]*Miranda v. Arizona,* 384 U.S. 436 (1966).

[25]*United States v. Cardenas,* 410 F.3d 287, 292-93 (5th Cir. 2005).

*Miranda* rights, waived them, and then talked to agents about his involvement in the conspiracy, and as the record confirms this occurred, any motion by counsel to suppress such statement would have been meritless.[26] Velasquez has not shown counsel was deficient with regard to this ground for relief, and such ground is denied.

For all of the above reasons, Velasquez's motion for relief under 28 U.S.C. § 2255 (docket no. 1) is DENIED.

*Certificate of Appealability*

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.[27] Rule 11 of the Rules Governing Section 2255 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."[28] The COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."[29] A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of

---

[26] *See generally Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994)("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

[27] *See* Fed. R. App. P. 22(b).

[28] RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, RULE 11(a) (December 1, 2009).

[29] 28 U.S.C.A. § 2253(c)(2)(West 2006).

reason could conclude the issues presented are adequate to deserve encouragement to proceed further."[30]

Upon review and consideration of the record in the above-referenced case as to whether § 2255 movant Velasquez has made a showing that reasonable jurists would question this Court's rulings, the Court determines he has not and that a certificate of appealability should not issue for the reasons stated in this order.[31]

Therefore, a certificate of appealability should not issue.

SIGNED November 8, 2012.

                                                        _____
                                                        TERRY R. MEANS
                                                        UNITED STATES DISTRICT JUDGE

---

[30]*Miller-El v. Cockrell,* 537 U.S. 322, 326 (2003)(citing *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

[31]*See* Fed. R. App. P. 22(b); *see also* 28 U.S.C.A. § 2253(c)(2)(West 2006).

14